IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

## DEDRICK D. CHISM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Henry County**
**No. 13668     Julian P. Guinn, Judge**

_____

**No. W2005-00427-CCA-R3-PC  - Filed November 7, 2005**

_____

This is an appeal as of right from a denial of post-conviction relief.  The Defendant, Dedrick Chism, was convicted by jury verdict of two counts of sale of more than one-half gram of cocaine, a Class B felony.  This Court upheld the Defendant's convictions on direct appeal.  See State v. Dedrick Dewayne Chism, No. W2002-01887-CCA-R3-CD, 2003 WL 23100335 (Tenn. Crim. App., Jackson, Dec. 23, 2003).  The Defendant subsequently filed a petition for post-conviction relief, which was denied.  The Defendant now appeals to this Court arguing the single issue of ineffective assistance of trial counsel.  We affirm the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Gary J. Swayne, Paris, Tennessee, for the appellant, Dedrick D. Chism.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

        The events that led to the convictions at issue in this case were summarized by this Court on direct appeal as follows:

        This case relates to the defendant's selling crack cocaine to an undercover informant in 2001. Sylvester Island testified that in the spring of 2001, he was an undercover informant for the Twenty-Fourth Judicial District Drug Task Force and

worked with Agent Mark Anderson on drug purchases. He said that he met the defendant in January 2001 and that they became friends. He said that the defendant owned a car detail shop and that he began visiting the shop to drink beer with the defendant and other people. He said that on March 21, 2001, the defendant went to Memphis to buy drugs. He said he telephoned Agent Anderson and told him about the defendant's drug buy. He said that he and Agent Anderson met at a cemetery, that Agent Anderson searched his car and his person, and that Agent Anderson installed video equipment in his car. He said that Agent Anderson gave him two hundred dollars to buy drugs and that he went to the defendant's shop. He said that he told the defendant what he wanted, that the defendant gave him three large crack cocaine rocks, and that he gave the defendant two hundred dollars. He said he returned to the cemetery and met Agent Anderson. The state showed Island a plastic bag containing three crack rocks and he identified them as the drugs he bought from the defendant on March 21.

Island testified that on April 12, the defendant told him that the defendant was going to Memphis to purchase more drugs. He said he telephoned Agent Anderson and met with him on April 13 at the cemetery. He said Agent Anderson searched him and his car and installed a video camera in the car. He said he went to the detail shop and bought one hundred dollars worth of crack cocaine from the defendant. He said that he and Agent Anderson met back at the cemetery and that when Agent Anderson checked the video camera, they discovered that it had not been working. The state showed Island a second plastic bag containing crack cocaine, and he identified it as the cocaine he bought from the defendant on April 13. He said the task force paid him one hundred dollars every time he made an undercover drug buy.

On cross-examination, Island testified that during the second drug buy, a man named Robert was cleaning cars at the defendant's shop. He acknowledged that at a preliminary hearing in an unrelated drug case, he testified that he reported to Agents Lester McCaleb and Mark Anderson when in fact Agent McCaleb had died seven weeks earlier. He said he also got paid one hundred dollars every time he testified in a case.

Mark Eric Dunlap, a forensic scientist with the Tennessee Bureau of Investigation (TBI), testified that he performed analysis on two bags of evidence received in the TBI laboratory. He said that the substance in the first bag was four grams of cocaine and that the substance in the second bag was 1.6 grams of cocaine.

Agent Mark Anderson of the Twenty Fourth Judicial District Drug Task Force testified that in the spring of 2001, he was conducting an undercover drug operation and using Sylvester Island as an informant. He said that on March 21, 2001, he and Island met at a cemetery and that he did a pat-down of Island's person and searched his car. He said he installed video equipment in the trunk and gave

Island two hundred dollars in order to buy drugs. He said that Island also was wearing a body wire, that the wire transmitted to a radio in Agent Anderson's car, and that he stayed within "ear distance" of Island at all times. He said that Island was gone for about forty-five minutes and that Island returned to the cemetery and gave him crack cocaine. He said that they put the cocaine in a plastic bag and that both initialed the bag. He said that he searched Island and Island's car again and that he paid Island one hundred dollars. He said that this same set of events happened again on April 13. He said that the surveillance equipment malfunctioned during both of Island's drug buys. He said, though, that Island had participated in sixty-two other drug cases and had worked as an informant for other state and federal agencies and that he had no reason to doubt Island's credibility.

On cross-examination, Agent Anderson testified that an affidavit he signed alleged that Island bought one-half gram of cocaine from the defendant on March 21 when the amount was actually four grams. He said he could not explain the discrepancy in the amounts other than he made a mistake. He said that he tried to audio- and videotape all drug buys but that the equipment malfunctioned in this case. He said that he did not see Island purchase drugs from the defendant and that the only evidence tying the defendant to this case was Island's testimony. He acknowledged that in his police report, he stated that both of the drug buys were captured on audio- and videotape. He said that the Friday before trial, he gave the defense Robert Williams' full name. He said he could not give the defense Mr. Williams' address and phone number because he did not know them. He said that Island would be paid one hundred dollars for testifying against the defendant.

The jury convicted the defendant of two counts of selling a Schedule II controlled substance.

Chism, 2003 WL 23100335, at *1-2.

In December of 2003, this Court affirmed the Defendant's convictions on direct appeal. See id. at *6. The Petitioner filed a pro se petition for post-conviction relief in June of 2004, alleging several issues including ineffective assistance of counsel. The trial court issued a preliminary order finding a colorable claim existed, and appointed counsel to represent the Defendant. In September of 2004, an evidentiary hearing was conducted during which the Defendant and his trial counsel testified.[1]

---

[1]This hearing was initially delayed as the defense was granted a continuance to obtain a "material witness." However, on the day of the rescheduled hearing, the defense stated that it was unable to find this witness and elected to proceed with the hearing. The Defendant and his trial counsel were the only witnesses who testified at the post-conviction hearing.

At the post-conviction hearing, Counsel,[2] the Defendant's trial counsel, testified that he had been practicing for eighteen years, and had handled "several hundred" criminal cases. Counsel stated that he represented the Defendant both at the preliminary hearing in general sessions court and at trial. In preparation for trial, Counsel consulted with the Defendant multiple times, met with all of the State's witnesses, interviewed potential defense witnesses, and fully exercised his "open discovery" rights.[3]

Counsel testified that his primary defense strategy at trial was to impeach the credibility of the State's primary witness, Mr. Sylvester Island, based on inconsistent statements this witness had made in various court proceedings. According to Counsel, Mr. Sylvester's testimony at the preliminary hearing was suspect. His testimony was contradicted on some points by a police officer who also testified at the preliminary hearing.[4] Counsel stated that he entered the preliminary hearing transcript into the record at the Defendant's trial, and believed his defense strategy of impeaching Mr. Island's testimony was sound.

When Counsel was asked why he did not subpoena the "Robert" Mr. Island testified he met at the Defendant's place of business during the second drug sale, Counsel stated that he recognized this "Robert" to be a potential witness, but did not know his last name, and the information his client gave him was incorrect.[5] Counsel further stated that he tried to obtain information on Robert from the State, but he was not given the man's full identity until only days before the trial, when it was too late to subpoena him.

Counsel was asked why he did not subpoena Officer Jacque Bass,[6] who could have impeached Mr. Island's testimony concerning a photographic lineup. Counsel replied that he intended to cross-examine Officer Bass, whom the State listed as a witness, but the State did not call Officer Bass at the Defendant's trial. Counsel admitted that it was a mistake to not subpoena Officer

---

[2] The Defendant's trial counsel, against whom the Defendant's allegations of ineffective assistance of counsel were levied, will be referred to only as "Counsel" throughout this opinion.

[3] The local District Attorney's office had a policy of allowing the defense counsel to photo copy its entire case file, including, occasionally, notes that could rightly be withheld as work product.

[4] According to the record, Mr. Island testified at the preliminary hearing that he was shown a photographic lineup consisting of "blacks, whites, and several others . . . even a German." However, Officer Jacque Bass testified that he showed Mr. Island a photographic lineup that contained pictures of only black individuals.

[5] An individual first identified only as "Robert" was, according to Mr. Island, working in the Defendant's place of business and involved in the second drug sale. The Defendant thought Mr. Island was referring to Robert Williams. However, the Robert in question was later identified as Robert Kendall. The State did not call Mr. Kendall as a witness at trial. At the post-conviction hearing, the Defendant alleged that Counsel should have been able to discover the identity of this witness because he was arrested and incarcerated at the same time as the Defendant. However, Counsel stated that he checked and found no "Robert" incarcerated. The Defendant maintained at the post-conviction hearing that he never knew Mr. Kendall, and never employed him at his business as Mr. Island testified.

[6] Officer Bass is alternately identified as "Jock" and "Jack" Bass in the record.

Bass or someone else involved in the photographic lineup procedure. However, Counsel also stated that much of the testimony he hoped to elicit directly from Officer Bass he was able to raise at the Defendant's trial anyway during his cross-examination of Mr. Island.

When asked why he did not subpoena Steve Russell, Counsel stated that he made the tactical decision that Mr. Russell's potential testimony would not be helpful to the Defendant's case.[7]

Counsel also testified that he carefully consulted with the Defendant about the benefits and detriments of testifying, including informing the Defendant that if he did testify he would open the door to his prior record, which the State would likely use to impeach his testimony. Counsel stated that the Defendant debated what to do for some time, but "on the day of the trial, he agreed he would not testify." Counsel further stated that the Defendant never changed his mind or informed him that he wanted to testify. Additionally, Counsel testified that while he was assured off the record of the Defendant's desire not to testify, he was not aware of the Momon requirement to place this election on the record.

The Defendant testified at the post-conviction hearing that while he had an extensive prior criminal record, he had always before pled guilty and therefore was not familiar with his right to testify at trial. He further stated that he informed Counsel that he wanted to testify, but was never told he had the right to do so. The Defendant also stated that he informed his trial counsel that Mr. Steve Russell was not the DJ at a the party Mr. Island mentioned in his testimony, and did not know why Counsel failed to call him as a witness.

On cross-examination, the Defendant admitted that during his prior appearances before various courts he was informed of his right to take the stand and testify. He also admitted that Mr. Russell had an extensive criminal record himself, thereby rendering suspect any testimony he may have given.

In January of 2005, the trial court issued an order denying the Defendant's petition for post-conviction relief. This appeal followed.

**ANALYSIS**

The Defendant alleges that his trial attorney was constitutionally deficient in two respects related to his jury trial: (1) Counsel was inadequate in his investigation and preparation for trial, and (2) Counsel failed to properly follow the Momon guidelines for ensuring the Defendant was advised of his right to testify. The Defendant further argues that these deficiencies led to actual prejudice and therefore he is entitled to post-conviction relief.

---

[7]According to the record, Mr. Island stated during his preliminary hearing testimony that he was introduced to the Defendant by Mr. Steve Russell, who was a DJ at a party they both attended. The Defendant argued at the post-conviction hearing that Mr. Russell was in fact not the DJ at this party, and therefore his trial counsel erred in not calling Mr. Russell as a defense witness to impeach Mr. Island's testimony on this point.

## I. Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

## II. Ineffective Assistance of Counsel

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This

Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

### A. Inadequate Investigation and Preparation

The Defendant asserts that the simple fact that Counsel did not subpoena any defense witnesses is strong evidence of inadequate investigation and preparation. Specifically, the Defendant argues that Counsel should have called Officer Bass, Mr. Steve Russell, and Mr. Robert Kendall to impeach Mr. Island's testimony. The Defendant argues that his trial counsel's failure to call these witnesses amounted to deficient representation and prejudiced him at trial.

We begin our analysis by noting the findings the trial court made as to the Defendant's assertion of deficient investigation and preparation:

> The allegation that trial counsel failed to properly prepare for trial and conduct a proper investigation is not supported by the evidence. More importantly and determinative, there is no evidence that would indicate that a "more proper" or even a different type of trial preparation or investigation could have brought about a different result in the jury's verdict. The allegation that trial counsel failed to present key witnesses falls into the same category. No witnesses were produced by the petitioner in this proceeding. There is no evidence to support what other witnesses could have added to the trial that would have affected its outcome.

The evidence does not preponderate against the findings of the trial court. We agree with the conclusion that no prejudice has been shown.

Additionally, as the Defendant noted in his appellate brief, the burden an appellant must meet upon alleging that counsel failed to discover, interview or present witnesses in support of his or her defense is the presentation of these witnesses "at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In Black, this Court stated that a defendant petitioning for post-conviction relief based on his trial counsel's failure to call a known witness is "not entitled" to such relief "unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." Id. at 758. In this case, the Defendant failed to present at his post-conviction evidentiary hearing any of the witnesses allegedly overlooked by Counsel.

The Defendant has failed to point to any evidence which would overcome the findings of the post-conviction court that his trial counsel was not deficient in his investigation or preparation for trial. Moreover, we find the Defendant failed to present any of the witnesses at his post-conviction hearing that he alleges his counsel should have called at trial. As stated above, this Court is not

allowed to "speculate or guess on the question of whether further investigation would have revealed a material witness or what a material witness's testimony might have been if introduced by defense counsel." Black, 794 S.W.2d at 757. Thus, applying an objective standard of reasonableness, we find no deficient representation based on the evidence before us on appeal. We also find the Defendant has failed to demonstrate that his trial counsel's investigation or trial preparation prejudiced him in any way.

### B. Failure to follow the Momon guidelines

The Defendant also asserts that his trial counsel was ineffective for failing to apprise him of his right to testify at trial and ensuring that he knowingly, intelligently and voluntarily waived this right by complying with the guidelines in Momon v. State, 18 S.W.3d 152 (Tenn. 1999). While disputed by Counsel, the Defendant also asserts that he wanted to take the stand and testify. He stated that he so informed his trial counsel, but was nonetheless prevented from testifying. Defendant notes that Counsel himself stated at the post-conviction hearing that he was unaware of the Momon requirements. Therefore, the Defendant requests this Court to declare the omission of the Momon colloquy in his case per se deficient representation.[8] The Defendant further argues that he was prejudiced by his trial counsel's failure to follow the Momon guidelines. We disagree.

In Momon, the Tennessee Supreme Court held that the right of a defendant to testify on his own behalf is a fundamental constitutional right that may only be waived personally by the defendant. To ensure that a defendant's right to testify has indeed been personally waived, the court adopted procedural guidelines that call for the defense counsel to request a jury-out hearing to demonstrate that a defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made. See Momon, 18 S.W.3d at 162-63. However, our supreme court also expressly stated:

> The procedures are prophylactic measures which are not themselves constitutionally required. As such, the procedures adopted herein do not establish a new constitutional rule which must be retroactively applied . . . . [M]ere failure to follow these guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant.

Id. at 163.

Significantly, the record in the present case does contain evidence that the Defendant did indeed personally waive his right to testify. After conducting an evidentiary hearing, the post-conviction court made the following findings:

---

[8]The State seems to concede that the omission of the Momon colloquy did amount to deficient representation. On appeal, the State argues only that while the omission was error, it was harmless error.

Lastly petitioner contends he was denied the right to testify. Quite simply stated, this allegation is untrue. That trial counsel elected not to follow the procedural guidelines of Monon [sic] vs State, 18 SW3rd 152 (Tenn. 1999), does not justify the setting aside of the verdict in this case. There is more than ample evidence that the trial counsel discussed the advantages and disadvantages of testifying with the petitioner on more than one occasion prior to trial and that the petitioner knowingly and intelligently made the decision to not take the stand. The wisdom of this decision becomes quickly apparent upon reviewing the petitioner's criminal history. Interestingly, petitioner made the decision to not testify before the trial commenced. A recess was granted during the trial following the close of the state's proof to allow trial counsel to confer and confirm that the petitioner had not changed his mind.

This court concludes there is nothing in the record that even remotely suggests an abridgment of any right guaranteed the petitioner by the constitutions of the United States of America or the State of Tennessee.

As noted by the post-conviction court, there is ample evidence that the Defendant did personally waive his right to testify. The Defendant's trial counsel, whose testimony the court accredited, testified at the post-conviction hearing that he conferred with the Defendant prior to trial, informed him of his rights, and the Defendant elected not to testify. The post-conviction court judge, who also presided over the Defendant's trial, noted that Counsel requested a recess to again confirm that the Defendant had not changed his mind about testifying at trial. Thus, the failure to conduct a full jury-out <u>Momon</u> colloquy in this case, while error, was procedural error of the sort that "will not in and of itself support a claim for deprivation of the constitutional right to testify." <u>Momon</u>, 18 S.W.3d at 163. Counsel's error does not gain the Defendant post-conviction relief on the ground of ineffective assistance of counsel.[9]

The Defendant has failed to demonstrate that his constitutional right to testify was abridged by his trial counsel's omission of a <u>Momon</u> colloquy. Accordingly, the Defendant has failed to prove by clear and convincing evidence that his counsel's representation fell outside the range of reasonable professional assistance. Because we find that the Defendant's representation was not deficient, we need not address the <u>Strickland</u> prejudice prong. This issue is without merit.

## CONCLUSION

The Defendant has failed to demonstrate that he received the ineffective assistance of counsel at trial. We affirm the judgment of the court denying post-conviction relief.

---

[9]The free-standing claim of a <u>Momon</u> violation has been waived because it was not presented to the trial court nor raised on direct appeal. <u>See</u> Tenn. Code Ann. § 40-30-106(g). Accordingly, we address the <u>Momon</u> issue only as it relates to the Defendant's ineffective assistance of counsel claim. <u>See</u> <u>Mario Deangalo Thomas v. State</u>, No. W2004-01704-CCA-R3-PC, 2005 WL 1669898, at * 2 (Tenn. Crim. App., Jackson, July 18, 2005).

_____

DAVID H. WELLES, JUDGE